**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

W. MICHAEL RZEPIENNIK,

Plaintiff-Appellant,

v.

ARCHSTONE-SMITH, INC.,

Defendant-Appellee.

No. 08-1129
(D.C. No. 1:07-CV-1243-MJW-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

On August 28, 2002, defendant Archstone Smith, Inc. ("Archstone")

terminated plaintiff W. Michael Rzepiennik's employment. On June 13, 2007, he

brought this action against Archstone, asserting a claim pursuant to the employee

protection provisions of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX

claim"), as well as a state law claim for breach of contract. The district court

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dismissed his complaint and the entire action with prejudice, finding that both his claims were time-barred. We affirm.

**BACKGROUND**

In his complaint, Rzepiennik alleged the following facts. Archstone is in the business of apartment investment and operations. It owns and operates a portfolio of apartment communities in various American cities. Archstone hired Rzepiennik in May 1998 as a Production Officer. In December 2000, he was promoted to Vice President of Production, the position he held at the time of his termination. His duties required him "to review and approve all general contractors' payment requisitions and to ensure compliance with contracts between [Archstone] and contractors." Aplt. App. at 8.

Archstone does not construct the real estate developments it undertakes. It contracts instead with third party builders to perform the actual construction. These contractors in turn hire subcontractors to perform specified tasks. It was part of Rzepiennik's job to ensure that these subcontractors released any statutory lien rights they might have had under state law for unpaid work, so that clear title could be conveyed to the newly constructed properties. He was also required to verify that contractors complied with cost and timeliness requirements of their contracts with Archstone. Rzepiennik contends this supervision of financial transactions constituted part of the internal controls Archstone was required by the Sarbanes-Oxley Act to maintain.

-2-

In the Spring of 2002, Rzepiennik began reporting to his supervisors what he viewed as significant irregularities involving lien waivers and other transactions with one of Archstone's contractors. On August 28, 2002, Archstone terminated his employment. After his termination, it continued to investigate his allegations of fraud.

Rzepiennik met with various Archstone audit and human resources personnel on August 20, 2003, to discuss the results of the investigation of his charges. On that same day, Archstone's counsel sent him a letter offering an incentive bonus payment of $255,589 for his work on one of the projects involved in his fraud allegations. The offer was conditioned on his agreement: 1) not to disclose to any person or regulatory agency the facts about the alleged fraud or Archstone's investigation, and 2) to return to Archstone all documents and copies he possessed relating to his allegations.

The letter gave Rzepiennik 21 days from its receipt to accept its terms and sign a global release of all his claims in order to receive the bonus payment. On September 12, 2003, he returned to Archstone's offices and attempted to negotiate the terms of the offer. On that day an Archstone representative notified him it would only adhere to the terms and conditions contained in the offer.

Rzepiennik's complaint further recites that:

Within 90 days of the expiration of [Archstone's] offer and conditions, Plaintiff filed this action by letter with the Occupational Safety and Health Administration (OSHA) of the U.S. Department of

-3-

Labor.  OSHA marked as received this complaint on December 15, 2003.

*Id.* at 27.

Rzepiennik obtained a hearing before an administrative law judge (ALJ), who issued a decision finding his administrative complaint untimely.  He then sought review with the Administrative Review Board (ARB), *see* 29 C.F.R. § 1980.110, and subsequently elected to proceed *de novo* in district court after 180 days lapsed from the time of filing his complaint without a final ARB decision, *see id.* § 1980.114.  *See also* 18 U.S.C. § 1514A(b)(1)(B) (if the Secretary of Labor "has not issued a final decision within 180 days of the filing of the [administrative] complaint . . . [an employee may bring] an action . . . for de novo review in the appropriate district court of the United States.").

Rzepiennik included no exhibits with the complaint he filed with the district court.  Archstone attached to its motion to dismiss a number of exhibits allegedly referred to in the complaint.  These included a file-stamped copy of the first two pages of Rzepiennik's administrative complaint.  Aplt. App. at 48-49.  That exhibit bears two file stamps: the first simply states "RECEIVED Dec 15 2003," while the second is marked "U.S. DEPT. OF LABOR–OSHA REGIONAL OFFICE 03 DEC 24 AM 11:35 PHILADELPHIA, PA."  *Id.* at 48.

Based on these file stamps, as well as the representation in Rzepiennik's complaint — that OSHA received his administrative complaint on December 15,

2003 — Archstone moved to dismiss the SOX claim as untimely. It cited a provision of SOX requiring such a claim to be filed with the Secretary of Labor "not later than 90 days after the date on which the violation occurs." 18 U.S.C. § 1514A(b)(2)(D).[1] The district court concluded, even using the earlier December 15, 2003, file-stamp date, Rzepiennik had not timely filed his SOX claim with the Secretary of Labor. The adverse action, triggering the beginning of the 90-day filing period, it reasoned, occurred when Rzepiennik received Archstone's bonus offer, not when the offer expired or when Archstone refused to negotiate the offer's terms.[2] Rzepiennik's SOX claim was dismissed for failure to timely pursue administrative action.

Archstone also attached to its motion to dismiss a copy of the Development Incentive Plan, under which Archstone claimed it had offered to pay Rzepiennik a bonus. This Plan document said bonuses would be payable "by February 15 following the calendar year for which they are attributable." Aplt. App. at 136. According to its terms the plan is governed by Maryland law, without regard to the conflict of law provisions of any state. *Id.* at 137. Maryland law provides for

---

[1]     The Secretary of Labor has delegated the duty of receiving whistleblower complaints under SOX to OSHA. *See* 29 C.F.R. § 1980.103(c); Secretary's Order 5-2002, 67 FR 65008, 2002 WL 31358967 (Oct. 22, 2002).

[2]     Rzepiennik's complaint made no reference to the outcome of his OSHA complaint. Archstone attached to its motion to dismiss a copy of a Department of Labor decision dated February 23, 2007, dismissing the claim for untimeliness. Aplt. App. at 53-76. The district court, conducting a de novo review, did not directly rely on this OSHA decision. Neither do we.

a general three-year statute of limitations for civil actions.  Archstone claimed the state law contract claim was untimely under Maryland law.

Rzepiennik contended the Plan document attached to the motion to dismiss could not be relied upon because it was accompanied by a memorandum indicating it was a "draft."  *Id.* at 78.  The district court considered an affidavit from Archstone's president to which he attached a "true and correct copy of the Plan in place for calendar year 2002" which, he averred, was "the only Development Incentive Plan administered . . . for the benefit of [Archstone's employees]."  *Id.* at 130-31.

In view of that affidavit Rzepiennik conceded he had no basis on which to challenge the authenticity of the Plan document or its applicability for calendar year 2002.  He argued, however, that dismissal was inappropriate because Archstone may have had discretion to pay a bonus outside of the Plan's formal terms and may have used that discretion to punish him by withdrawing its offer to pay him a bonus when he did not agree to conceal Archstone's alleged fraud.

The district court determined Maryland's three-year statute of limitations applied, and it ran three years from either (a) February 15, 2003, the bonus payout date, or (b) August 20, 2003, the date of the settlement offer.  In either event the breach of contract claim in Rzepiennik's complaint was untimely.

**ANALYSIS**

**1. SOX Claim**

We review de novo the district court's timeliness determination and Rzepiennik's resulting failure to exhaust his administrative remedies. *Harms v. I.R.S.*, 321 F.3d 1001, 1009 (10th Cir. 2003). Rzepiennik claims the district court's timeliness decision was inappropriate on a motion to dismiss, because (1) he had no duty under Fed. R. Civ. P. 8(a) to plead timely filing of his administrative complaint, and (2) unresolved factual issues exist that cannot be resolved on a motion to dismiss.

We may dispense quickly with these initial contentions. The SOX claim was not dismissed because Rzepiennik failed to allege compliance with the DOL's filing requirements. It was dismissed because what he *did* allege, together with the documents Archstone properly supplied, unequivocally demonstrated the untimely filing. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense.").

The district court was entitled to consider both the language of the complaint and the attachments referred to in the complaint and submitted by Archstone with its motion to dismiss.

> [I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

*Id.* at 1385.

The district court found the administrative complaint submitted by Archstone to be both central to Rzepiennik's claim and indisputably authentic. Rzepiennik provides no reason to overturn these conclusions.

We now turn to the substance of the timeliness inquiry. As noted, SOX requires a claim to be filed with the Secretary of Labor "not later than 90 days after the date on which the violation occurs." 18 U.S.C. § 1514A(b)(2)(D). In consulting the complaint and the documents submitted, we must therefore

answer two questions: (1) when did the alleged SOX violation occur? and

(2) how long after that date did Rzepiennik file his administrative complaint?

### A. Date of SOX Violation

Under federal discrimination statutes, the time for filing an administrative

charge of employment discrimination begins running when a discrete unlawful

practice takes place. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618,

628 (2007).[3] *See also Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 114

(2002).[4] A discrete adverse action "takes place" when a decision is made and

---

[3] In response to *Ledbetter*, Congress passed the "Lilly Ledbetter Fair Pay Act of 2009," Pub. L. No. 111-2, § 3, 123 Stat. 5. The Act amends Title VII with respect to the date of occurrence of discriminatory compensation claims, stating that

> an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A) (2009). There is no indication in the new law that Congress intended this change to affect retaliation claims such as Rzepiennik's SOX claim. *Cf. Stewart v. Gen. Mills, Inc.*, ___F. Supp. 2d___, No. 08-CV-16-LRR, 2009 WL 350639, at *9 n.2 (N.D. Iowa Feb. 11, 2009) (rejecting application of Lilly Ledbetter Act in analyzing timeliness of filing Title VII discrimination and retaliation suit after right to sue letter was received).

[4] The charge filing provisions of the Sarbanes-Oxley Act and Title VII contain very similar language. Both statutes use the terms "shall" to set forth the

(continued...)

communicated to the plaintiff, even if the effects of the action do not occur until later. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). *See also* 29 C.F.R. § 1980.103(d) (a SOX violation occurs "when the discriminatory decision has been both made and communicated to the complainant.").

Rzepiennik's complaint refers to Archstone's August 20, 2003, letter offering to pay him a bonus, conditioned on 1) his promise not to disclose the underlying facts concerning the alleged fraud, and 2) his delivery to Archstone of all documents and copies in his possession reflecting the alleged fraud. The district court concluded the letter made and communicated Archstone's adverse decision to Rzepiennik and triggered the 90-day time period.

Rzepiennik, however, argues the adverse action occurred later, for two reasons. First, he contends, the adverse action occurred when the 21-day period given to him to accept the offer expired. Second, he argues, the adverse action occurred when Archstone rejected his attempts to negotiate the terms of the letter agreement.

The district court correctly held that these later events did not extend the time period for filing an administrative complaint. The fact that the offer

---

[4](...continued)
timing of an action's commencement. Section 1514A(b)(2)(D) states: "an action . . . shall be commenced not later than 90 days after the date on which the violation occurs." This is similar to language, contained in 42 U.S.C. § 2000e-5(e)(1), which refers to a filing "after the alleged unlawful employment practice occurred."

contained a 21-day acceptance period did not extend the time period. Rzepiennik knew or should have known that Archstone had placed improper conditions on his receipt of the bonus at the time he received the proposed agreement. The subsequent expiration of Archstone's offer was a consequence of Rzepiennik's decision not to accept its terms. It was not a new, actionable instance of retaliation. *Cf. Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1186-87 (10th Cir. 2006) (where plaintiff failed to offer factual basis for asserting that letter "simply restat[ing] the school district's unconditional decision" not to rehire him "reflected an independent act of discrimination/retaliation in hiring," letter could not be used to revive time period for filing discrimination charge).

Rzepiennik argues, however, that the conditions of the offer were too technical and legalistic to have "made and communicated" the decision to offer him a conditional bonus at the time he received the offer. *Ricks*, 449 U.S. at 258. We reject this argument for the same reason the district court did:

> [C]lear notice was given that the offered bonus would not be paid absent [Rzepiennik's] agreement to the terms set forth. The employment action and the consequences were easy to identify. The result, albeit delayed, was an inevitable consequence of [Rzepiennik's] failure to sign the agreement.

Aplt. App. at 157.

Rzepiennik also argues it would contravene the Age Discrimination in Employment Act of 1967 (ADEA) to count that statute's 21-day consideration period as part of the 90-day SOX filing period. The ADEA prevents an effective

-11-

waiver of any right under its provisions unless, among other things, "the individual is given a period of at least 21 days within which to consider the agreement."  29 U.S.C. § 626(f)(1)(F)(i).  That strikes us as a dubious argument because the critical issue is notice of the violation (an improper offer), not acceptance and participation in it.  In any event Rzepiennik has made no effort to show how including the 21-day consideration period within the 90-day filing window impaired his ability to timely invoke the SOX protections available to him.

We also reject Rzepiennik's argument that the time for filing ran from September 12, 2003, the day he met with an Archstone representative and attempted to negotiate the terms of the letter agreement.  Rzepiennik's attempt to negotiate the terms of the agreement on September 12, 2003, could conceivably have extended the adverse action date, but only if Archstone had engaged in negotiations and thereby, expressly or impliedly, indicated that a final (actionable) decision had not yet been made.  But that is not the factual scenario plead in his complaint, which claims Archstone "informed the Plaintiff that [it] would adhere only to its terms and conditions that were in the offer."  *Id.* Archstone did not withdraw, amend or extend its settlement offer; the offer

expired on its own terms because Rzepiennik did not accept it.[5] Under basic

principles of contract law, Rzepiennik's unilateral action in attempting to

negotiate the terms of Archstone's offer could not modify or extend those terms;

it could at most only communicate a counter-offer. *See* Restatement (Second) of

Contracts §§ 39, 59 (1981). But he made no counter-offer, only an overture to

negotiate. In any event, it was the terms and conditions of the offer itself, not a

counter-offer (had there been one), that gave Rzepiennik notice of the alleged

SOX violation.

The adverse action occurred when Archstone's offer was made. Rzepiennik

had 21 days to accept and/or 90 days to file. The time for filing his

administrative charge ran from when he received the letter, on or about August

24, 2003.

**B. Date SOX Complaint was Filed**

In his complaint, Rzepiennik specifically said he "filed this action by letter

with [OSHA]" and "OSHA marked as received this complaint *on December 15,*

*2003*." Aplt. App. at 27 (emphasis added). If, as discussed above, we employ the

August 24, 2003, date as the date the 90-day period began running, the OSHA

complaint should have been filed no later than November 22, 2003. Even if

---

[5] Rzepiennik analogizes his case to *Connecticut Light & Power Co. v. Secretary of United States Department of Labor*, 85 F.3d 89 (2d Cir. 1996). That case, however, did involve an ongoing negotiation process and we do not find it persuasive here.

we were to extend the presumptive filing deadline to Monday, November 24, 2003 — because the 22nd fell on a Saturday — this date is over three weeks before the December 15, 2003, date of filing recited in Rzepiennik's complaint.

Notwithstanding the plain language of his complaint, Rzepiennik attempts to establish some date other than December 15, 2003, as the filing date for his complaint. He first argues that the varying file stamp dates on the copy of the complaint Archstone submitted have created a factual issue incapable of resolution on a motion to dismiss. But both the file stamp dates are after the presumptive filing deadline: the earlier of the two is dated December 15, 2003.

Rzepiennik next argues the date he mailed his complaint, rather than the date on which OSHA received the complaint, should be used as the filing date. The copy of the complaint submitted by Archstone does indicate it was "mailed" to OSHA and others. Aplt. App. at 48. Unless the complaint is filed in person, such as by hand-delivery, "[t]he date of the postmark, facsimile transmittal, or e-mail communication will be considered to be the date of filing" 29 C.F.R. § 1980.103(d).

Neither party has submitted a postmarked envelope to establish the date Rzepiennik mailed his complaint. In the absence of such evidence, he argues, the postmark date could be computed by subtracting five days from the date of receipt. Aplt. App. at 100 & n.6. Fair enough. But in order to work backwards to a mailing date within the filing period, Rzepiennik would require considerably

-14-

more than five days. He would have to show his complaint was postmarked on or before November 24, 2003, and thus that it took more than *three weeks* to arrive and be file-stamped at OSHA.

Rzepiennik provides no good reason to apply such a lopsided calculation in his case.[6] He does contend, based on a finding by the ALJ in his administrative proceeding, the SEC received its copy of the complaint on December 5, 2003, and that this creates a factual issue about when he mailed his complaint to OSHA. But even assuming a simultaneous mailing date to OSHA and the SEC, applying the five-day presumption to the SEC's date of receipt yields a mailing date of November 30, 2003. That is still nearly a week too late.

## C. Conclusion

Rzepiennik had 90 days from the date he received Archstone's offer, August 24, 2003, to file his administrative SOX claim with OSHA. He failed to file within the 90-day period. His claim was therefore untimely, and the district

---

[6] Rzepiennik now argues that this court should take judicial notice that in November 2003, anthrax threats led to the closing of numerous post offices in the Washington, D.C. area. This event, he argues, may have slowed OSHA's receipt of his complaint. *See* Aplt. Opening Br. at 17 n.8. But he did not make this argument in the district court. In fact, as noted, there he argued for a five-day mailing presumption. We generally do not consider arguments made for the first time on appeal, and therefore decline to consider his contention concerning unscheduled closures at the post office. *United States v. Jarvis*, 499 F.3d 1196, 1201-02 (10th Cir. 2007).

court properly dismissed his SOX claim for failure of timely exhaustion of his administrative remedies.

## 2. State Law Contract Claim

As noted, Archstone attached to its motion to dismiss a copy of the Development Incentive Plan, which designated Maryland law as governing authority. Under Maryland law, a civil action must be filed within three years from the date it accrues unless a specific code provision provides otherwise. *Butler v. VisionAIR, Inc.*, 385 F. Supp. 2d 549, 553 (D. Md. 2005). A cause of action "accrues" when "the claimant in fact knew or reasonably should have known of the wrong." *Id.* (quotation omitted). In contract cases, this generally refers to the date of the breach. *Id.*

The district court found Rzepiennik's breach of contract claim accrued, at the latest, when the settlement offer was made, on August 20, 2003. Thus, his complaint, filed June 13, 2007, was untimely under the three-year statute of limitations.

Rzepiennik argues, however, that the choice of Maryland law depends on the accuracy and validity of Archstone's Development Incentive Plan. He admits that he has no basis on which to challenge the authenticity of the Plan document. But he argues that he has never conceded that Archstone's offer was necessarily coterminous with the Plan document. Archstone may have made bonus offers outside of the formal terms of the Plan to silence whistleblowers. Such offers

-16-

might not be subject to the Plan's choice-of-law provision. He asserts that further discovery is necessary to determine whether this is the case. He says he asked the district court for discovery, but his request was ignored.[7]

These arguments fail, however, for one simple reason. Rzepiennik has pled a breach of *contract* claim. The settlement letter itself did not create a contract, because he never signed it. The only possible contract breached was the contract created by his employment. And the only basis within that employment contract for him to receive a bonus was that provided by the Plan itself, as he implicitly acknowledges in his complaint:

> 57. Defendant breached its agreement with Plaintiff by willfully and wantonly *refusing to pay him his Development Incentive Plan Bonus for 2002* in the amount of $255,589. This is a liquidated amount requiring little or no computation.

Aplt. App. at 28 (emphasis added).

---

[7] Rzepiennik attempts to expand his argument on appeal to include a challenge to the authenticity of the Plan document itself. *See* Aplt. Br. at 27-28. But he did not make this argument in the district court. *See* Aplt. App. at 143-45. The argument will therefore be disregarded.

Any bonus offer Archstone made outside of the Plan and after the termination of Rzepiennik's employment would be just that:  an *offer*. Rzepiennik cannot base a breach of contract claim on the withdrawal of an offer he never accepted.  The only contract he had was based on the Plan.

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge
